IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| RICHIE HUMPHREY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No._____ |
| | ) JURY DEMANDED |
| CRC HEALTH TENNESSEE, INC., | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Richie Humphrey sues Defendant CRC Health Tennessee, Inc. as follows:

*Parties*

1. Plaintiff Richie Humphrey (hereinafter "Humphrey") is a citizen and resident of Dickson County, Tennessee.

2. Defendant CRC Health Tennessee, Inc. (hereinafter "CRC") is a corporation authorized to conduct business in the State of Tennessee. CRC's principal place of business is 20400 Stevens Creek Blvd., Cupertino, California 95014. CRC's registered agent for service of process is National Registered Agents, Inc. located at 2300 Hillsboro Road, Suite 305, Nashville, Tennessee 37212.

*Jurisdiction and Venue*

3. This cause of action alleges discrimination and retaliation in violation of the employment anti-discrimination laws of Title VII of the Civil Rights Act of 1964 and the American with Disabilities Act ("ADA"). The Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue on or about May 16, 2011.

Exhibit A. Therefore, jurisdiction over this action is conferred upon this Court pursuant to federal statute codified at 42 U.S.C. § 2000e-5 and 42 U.S.C. §§ 12101-12117.

4. This cause of action further alleges that CRC terminated Humphrey in violation of the Family Medical Leave Act of 1993 ("FMLA") codified at 29 U.S.C. §§ 2601-2654.

5. This cause of action also seeks civil enforcement because CRC failed to notify Humphrey of his rights or otherwise provide an opportunity for him to elect a continuation of his group health care insurance in violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), which amended the Employee Retirement Income Security Act ("ERISA") as is codified and authorized by 29 U.S.C. § 1132.

6. Humphrey's causes of action for violations of the aforementioned federal statutes are federal questions, and 28 U.S.C. §1331 confers jurisdiction on this court for those causes of action.

7. Humphrey also alleges violation of state law and seeks damages in excess of $75,000 from a foreign corporation for those violations. 28 U.S.C. § 1332 and 1367 provide jurisdiction for these causes of action.

8. The illicit acts and practices complained of herein took place within this district. Accordingly, this Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

*Facts*

9. New Life Lodge employed Humphrey in 2000. Humphrey was principally engaged in marketing and other business attraction efforts. Over the years, he started an

adolescent program at New Life Lodge, and eventually settled into his role as DCS Liason, coordinating a program whereby the State of Tennessee's Department of Children's Services ("DCS") placed juveniles for substance abuse treatment and education at New Life Lodge.

10. Humphrey's day to day duties involved networking with various representatives of DCS and the juvenile courts throughout Tennessee. Humphrey's exceptional work performance helped CRC establish relationships throughout the state, and the adolescent program was almost always filled to capacity. Given the nature of his work, Humphrey rarely reported for regular office hours, as his job involved personal contact and a great deal of travel.

11. New Life Lodge and, later, CRC knew that Humphrey was disabled. Humphrey suffers from a nerve condition called trigeminal neuralgia that causes severe pain in a facial nerve that travels through the face to its terminus behind his eye. This condition required pain management using narcotics and was fully disclosed throughout Humphrey's employment. Humphrey also suffers from clinical mood disorders that require active monitoring and treatment. Humphrey's conditions sometimes rendered him incapacitated and bed-ridden, but did not affect his performance and were easily accommodated by a flexible work schedule throughout Humphrey's employment.

12. CRC's parent corporation, the largest drug and alcohol treatment provider in the country, purchased New Life Lodge in 2006. CRC continued to employ Humphrey in his same role as DCS Liason, and his first bosses continued to accommodate his medical conditions by allowing him to work a flexible work schedule. Humphrey specifically spoke with Billy Young, CRC's first executive director for New Life Lodge, about his

mood disorders and his medications, and Mr. Young encouraged Humphrey to continue his previous work methods. Over time, however, individuals associated with the old New Life Lodge were replaced by more business minded individuals from CRC, and these individuals began demanding more and more from Humphrey, while accommodating his medical conditions less and less. Specifically, through the end of 20-08 and into 2009, Mr. young was phased out and new management changed Humphrey's duties, instituted more strict scheduling requirements, and imposed quotas on Humphrey. CRC's new demands and inflexibility exacerbated Humphrey's underlying conditions.

13. In November, 2009, Humphrey took leave to seek treatment because he had strayed from his pain management program and begun to overuse his narcotic medications. Humphrey informed his superiors at CRC of his developing problem, and CRC sent Humphrey to a sister facility in Virginia to treat him for medication management and mood disorders. Humphrey returned to work following his successful course of treatment.

14. CRC entered into an agreement with Humphrey in that document entitled "Return to Work Agreement". Pursuant to that agreement, CRC required that Humphrey follow the recommendations of aftercare, submit to random drug screens and pass all drug screens. By implication, if Humphrey performed these tasks, CRC would continue to employ him. Humphrey followed the agreement to the letter.

15. After Humphrey returned to work, his superiors at CRC continued to apply pressure to him and they changed his work atmosphere drastically. They began to complain that he did not work regular eight hour days on site, that his voice mail was often full, that he was late to in-house appointments.

16. Humphrey requested and was granted Family Medical Leave pursuant to CRC Policy and Procedure on or about February 24, 2009 so he could seek treatment for anxiety and depression.

17. While Humphrey was on leave for anxiety and depression, CRC continued to apply the pressure. Humphrey's superiors continually called him with work related inquiries and demands.

18. Humphrey attempted to return to work in April, 2009, but returned to approved Family Medical Leave on the recommendation of his doctor.

19. Humphrey's doctor had released him to be return to work on May 17, 2009.

20. As part of his treatment for anxiety and depression, Humphrey underwent in-patient psychiatric treatment at Parthenon Pavillion in Nashville, Tennessee. He was released on or about May 4, 2011. CRC began calling him the next day, while he was still on approved Family Medical Leave.

21. CRC called Humphrey into a meeting on May 13, 2011, while he was still on approved Family Medical Leave and sedated, and fired him.

22. At the time of his termination, CRC provided Humphrey with medical insurance through its group plan. After his termination, CRC failed to provide any communication to Humphrey of his right to a continuation of coverage.

23. CRC's termination of Humphrey caused him to experience an onslaught of additional anxiety and depression, requiring intensive inpatient and outpatient treatment for most of a year, leaving him totally incapacitated to manage his life or perform even the most basic life activities.

### ADA

24. At all times relevant herein, Humprey was an employee of CRC and CRC was an employer of Humphrey as such terms are defined by the ADA. CRC and its parent corporation employed more than 500 people.

25. At all times relevant herein, Humphrey was a disabled person as defined by the ADA.

26. At all times relevant herein, CRC knew Humphrey was disabled.

27. Humphrey was capable of performing his job with reasonable accommodation, as had been proven by years of successful performance.

28. CRC refused to extend Humphrey's reasonable accommodation and, in fact, terminated Humphrey because of his disabilities.

29. CRC acted in reckless and wanton disregard of the rights guaranteed by the ADA.

30. CRC's actions violated the ADA and Humphrey is entitled to all of the damages available pursuant to that statute and the rules and regulations promulgated thereunder, including but not limited to loss of past and future income, loss of past and future benefits, loss of reputation and prestige, mental anguish, emotional distress and embarrassment, punitive damages and attorney fees.

### Interference with FMLA Rights

31. At all times relevant herein, Humphrey was an employee and CRC was his employer as those terms are defined by the FMLA.

32. Humphrey was entitled to FMLA leave to seek treatment for his anxiety and mood disorders beginning in February, 2010.

33. Humphrey gave proper notice to CRC of his intent to exercise his FMLA leave, and such leave was approved by CRC.

34. CRC denied Humphrey a specific, substantive right guaranteed to him by the FMLA, to wit, his right to reinstatement at the completion of his leave.

35. CRC's actions constitute a willful violation of the FMLA's prohibition against interference with FMLA rights as codified at 29 U.S.C. § 2615(a)(1), and Humphrey is entitled to all damages available under that statute and the rules and regulations promulgated thereunder, including but not limited to loss of past and future income, liquidated damages and attorney fees.

*FMLA-Retaliation*

36. At all times relevant herein, Humphrey was an employee and CRC was his employer as such terms are defined in the FMLA.

37. Humphrey had availed himself of a protected right when he took FMLA leave approved by CRC beginning in February, 2010.

38. CRC terminated Humphrey.

39. Humphrey's exercise of his FMLA rights caused his termination.

40. CRC's termination of Humphrey constitutes a willful violation of the FMLA's anti-discrimination and anti-retaliation provisions codified at 29 U.S.C. § 2615(a)(2).

41. Humphrey is entitled to all damages flowing from CRC's willful violation of the FMLA's anti-discrimination and anti-retaliation provisions, including but not limited to damages for lost past and future income, liquidated damages and attorney fees.

## COBRA

42. At all times relevant herein, Humphrey was a "qualified beneficiary" and CRC was a "plan sponsor" as such terms are defined under the COBRA provisions of ERISA.

43. Humphrey's termination was a "qualifying event" as such term is defined under the COBRA provisions of ERISA.

44. CRC breached its fiduciary duty as plan sponsor and otherwise willfully violated the COBRA provisions of ERISA because it failed to notify or otherwise make available a continuation of coverage to Humphrey upon his termination as required by the law.

45. Alternatively and cumulatively, CRC also violated Tennessee's Continuation of Terminated Group Coverage statutory provisions codified at Tenn. Code Ann. § 56-7-2312.

46. Humphrey is entitled to full enforcement of the COBRA provisions of ERISA, including but not limited to actual monetary damages, a penalty of $100 per day for each day that it has failed to fulfill its obligations and attorney fees.

## Breach of Contract

47. Humphrey and CRC executed a valid, explicit contract of employment when they signed the Return to Work Agreement in November, 2009.

48. Humphrey performed all of his obligations under the agreement.

49. Implicit in the agreement was an obligation for CRC to continue Humphrey's employment so long as he complied with the terms of the agreement.

50. CRC breached the contract when it fired Humphrey despite his faithful performance of his obligations thereunder.

51. Humphrey is entitled to compensatory and ancillary damages for CRC's breach of contract under the common law of the State of Tennessee.

WHEREFORE, Humphrey seeks the following relief:

1. That process issue and be served in accordance with the Federal Rules of Civil Procedure;

2. For an award of front pay, back pay, statutory damages, compensatory damages, liquidated damages, punitive damages, attorney fees and all other relief to which he may be entitled;

3. That CRC be charged with the costs of this cause;

4. For general relief.

Respectfully submitted,

_____
Mark J. Downton, #20053
5654 Amalie Drive
Nashville, Tennessee 37211
(615) 275-6480

_____
Graham Prichard, #22980    by permission
4800 Charlotte Pike
Nashville, TN 37209
(615) 279-1887

Attorneys for Plaintiff